<u>**VIRGINIA:**</u>

In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond, on Friday, the 15th day of January, 2010.

Ivan Teleguz,                                                          Petitioner,

    against             Record No. 080760

Warden of the Sussex I State Prison,                          Respondent.

Upon a Petition for a Writ of Habeas Corpus

Upon consideration of the petition for a writ of habeas corpus filed April 21, 2008, and the respondent's motion to dismiss, the Court is of the opinion that the motion should be granted and the writ should not issue.

Ivan Teleguz was convicted in the Circuit Court of Rockingham County of capital murder for hire. Finding that the Commonwealth had proven the aggravating factors of "future dangerousness" and "vileness" beyond a reasonable doubt, <u>see</u> Code § 19.2-264.2, the jury fixed Teleguz's sentence at death. The trial court sentenced Teleguz in accordance with the jury verdict, and this Court affirmed Teleguz's conviction and sentence. <u>Teleguz v. Commonwealth</u>, 273 Va. 458, 466-67, 643 S.E.2d 708, 714 (2007), <u>cert.</u> <u>denied</u>, 552 U.S. 1191 (2008).

In claim (I), petitioner alleges he is actually innocent.

The Court holds that claim (I) is barred because assertions of actual innocence are outside the scope of habeas corpus review, which concerns only the legality of the petitioner's detention.

<u>Lovitt v. Warden</u>, 266 Va. 216, 259, 585 S.E.2d 801, 826-27 (2003).

In claim (II), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to challenge the Commonwealth's alleged motive for the crime and failed to "offer a viable alternative theory." Petitioner contends that the Commonwealth's theory that petitioner had his ex-girlfriend, Stephanie Sipe, killed because he was upset about paying child support could have been rebutted by evidence that Sipe's death would not have impacted petitioner's child support obligation. Petitioner contends that counsel should have called petitioner's child support case manager to testify that petitioner paid adequate child support both before and after Sipe's murder. Petitioner further contends that counsel failed to present evidence that petitioner's "former friends and associates" had motive and opportunity to kill Sipe, or that Aleksey Safanov and Gene Popov knew of Sipe's "family drug activity," providing another reason for Safanov and Popov's involvement in Sipe's murder.

The Court holds that claim (II) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Petitioner fails to provide affidavits from any of the witnesses he contends counsel should have called; fails to allege that, had these issues been presented, the jury would have found him not

2

guilty; and fails to allege that he knew that he would still be obligated to pay child support if Sipe died. Furthermore, counsel elicited testimony from a key Commonwealth's witness that Sipe was involved with drugs, and that petitioner was not solely upset about his child support obligation. Notably, counsel also raised the child support issue during closing argument, stating, "It is common sense to know that if the mother of a child was killed . . . child support is still owed to a child," thus touching on the very issue petitioner now alleges counsel failed to raise. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (III), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to present an alibi defense. Petitioner contends that under the Commonwealth's theory of the case, he could not have left Harrisonburg on the day of the murder before 4:15 a.m. Petitioner alleges that the trip from Harrisonburg to Ephrata, Pennsylvania, where petitioner traveled upon leaving Virginia, takes three hours and fifty-three minutes. Petitioner contends that he provided investigators with a receipt from an Ephrata Wal-Mart for items he purchased at approximately 8:14 a.m. after he had allegedly taken a shower and

3

gotten dressed at his home in Lancaster, Pennsylvania, which is just south of Ephrata. Petitioner contends that he informed counsel of this receipt, which would have demonstrated that he could not have left Harrisonburg as late as 4:15 a.m., but counsel unreasonably failed to request it or petitioner's bank records.

The Court holds that claim (III) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Leaving Harrisonburg at 4:15 a.m. and making a purchase at the Wal-Mart in Ephrata at approximately 8:14 a.m. is not implausible, particularly in light of petitioner's contention that the trip takes under four hours if obeying all speed limits. Furthermore, petitioner does not allege how the outcome would have been different had the receipt been entered into evidence. Exactly when petitioner left Virginia was not relevant to whether he had hired the killers, because no one contended that petitioner was at the scene of the murder when it took place or otherwise participated in the actual killing. Thus, petitoner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(A), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to

4

impeach petitioner's co-defendant's account of the time of Sipe's death. Michael Hetrick testified that he killed Sipe early in the morning, but petitioner contends that several witnesses reported seeing Sipe alive later that afternoon and early evening. Petitioner further contends that testimony from these witnesses would have been consistent with the medical examiner's opinion that Sipe died at 8:00 p.m., and with evidence that Sipe usually gave her son a bath in the afternoon or early evening, and that she was giving her son a bath when Hetrick killed her.

The Court holds that claim (IV)(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Sipe's precise time of death was not relevant to whether petitioner hired the killers, and petitioner does not allege how presenting these issues would have changed the outcome at trial. Furthermore, such evidence would have been cumulative of the medical examiner's testimony that Sipe likely died around 8 o'clock in the evening. In addition, the record, including the trial transcripts, demonstrates that counsel thoroughly cross-examined petitioner's co-defendants. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(B), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to impeach petitioner's co-defendants' testimony that petitioner had solicited them to kill Sipe at Dave Everhart's birthday party in June 2001. Petitioner contends that counsel unreasonably failed to call Latesha and Dave Everhart, who could have testified that petitioner was not at this party.

The Court holds that claim (IV)(B) fails to satisfy the "prejudice" prong of the two-part test enunciated in Strickland. Although petitioner alleges the Everharts would have contradicted Hetrick's testimony that petitioner was at the birthday party, petitioner does not demonstrate, or even allege, how that testimony would have changed the outcome of the trial. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In a portion of claim (IV)(C), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to impeach Hetrick's testimony that Hetrick called petitioner after the murder to confirm that the killing had taken place and to arrange for his payment. Petitioner contends that there is no evidence that he received a phone call at the phone number attributed to him by the Commonwealth, or that either

6

Hetrick or Edwin Gilkes had a cellular phone, as Hetrick had testified.  Furthermore, the Commonwealth did not introduce any phone records. In support of his claim, petitioner provides a variety of phone records purportedly for the number(s) attributed to him by the Commonwealth, which he contends do not show a phone call was received from Hetrick "on or about July 23-24, 2001." Petitioner contends further that counsel should have challenged both the inconsistencies between Hetrick's testimony and his statement to police, and Hetrick's assertion that petitioner paid him on the Tuesday following the murder, as petitioner alleges he was either at work or being questioned by police that day.

The Court holds that this portion of claim (IV)(C) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The record, including the trial transcripts, demonstrates that counsel cross-examined Hetrick about inconsistencies in Hetrick's testimony and his prior statements to police. Furthermore, Hetrick's testimony provided evidence that Hetrick and Gilkes had a cellular phone, which Hetrick believed they used to contact petitioner.  The phone records provided by petitioner do not include July 24, 2001, and do not identify with clarity the source of the phone calls or the recipient.  These records, however, do reflect that two calls were received from unknown cellular numbers on July 23, 2001.  Therefore, the evidence

7

petitioner now provides does not demonstrate that Hetrick did not call petitioner, as he had testified. Petitioner does not allege how presenting such evidence would have changed the outcome of the trial. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (IV)(C), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to impeach Hetrick's testimony that petitioner picked him up on Saturday night at 8:00 p.m. on the night before the murder. Petitioner contends that counsel should have called Mike Millay to testify that petitioner was with Millay at 8:00 p.m. on that night.

The Court holds that this portion of claim (IV)(C) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including Millay's affidavit and the trial transcript, demonstrates that Millay stated that he and petitioner parted ways between 9:00 p.m and 10:00 p.m., and Hetrick testified that petitioner picked him up after dark, "approximately nine, ten o'clock at night, possibly." Therefore, presenting testimony that petitioner was with Millay at 8:00 p.m. the night before the murders would not have changed the outcome of the proceedings. Thus, petitioner has failed to demonstrate that

8

counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (V), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to impeach Aleksey Safanov, who testified that petitioner had asked him to kill Sipe a few months before Sipe was murdered. Petitioner contends that trial counsel should have questioned Safanov about his prior inconsistent statements, the federal gun and drug trafficking charges against him arising from a scheme into which he had "temporarily lured" petitioner, his extensive criminal record, and the Commonwealth's indication that he would receive leniency in exchange for his testimony. Petitioner alleges trial counsel had documents and an audiotape that could have been used to clarify these issues and effectively impeach Safanov, which petitioner contends would have exposed why Safanov and his associates would have wanted to falsely incriminate petitioner.

The Court holds that claim (V) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcripts, demonstrates that counsel thoroughly cross-examined Safanov in an attempt to impeach his credibility. Specifically, counsel questioned Safanov about his criminal convictions and the

9

pending charges against him, including the federal gun trafficking charges, and whether he was testifying because he hoped he would receive leniency in those matters. Safanov acknowledged that he had contemplated implicating petitioner in Sipe's murder in order to receive a beneficial plea deal. Questioning Safanov in further detail about his federal gun trafficking charges would have emphasized petitioner's involvement in illegal weapons distribution, and could have lent credence to Hetrick's belief that petitioner was a member of the "Russian Mafia." Therefore, presenting such evidence "would have represented a 'two edged sword' that counsel often confront when constructing the strategy most likely to assist rather than harm a client." Shaikh v. Johnson, 276 Va. 537, 548, 666 S.E.2d 325, 330 (2008). Counsel also questioned Safanov about his inability to remember the specific time and place of the conversation in which he alleged petitioner had approached him about killing Sipe. Petitioner fails to demonstrate what testimony counsel would have elicited had he conducted additional cross-examination, and fails to allege how further exploration of these areas would have altered the outcome of the proceedings. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

10

In claim (VI), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to present testimony from FBI Agent Levphuk and from a confidential informant used to implicate Safanov in the federal gun trafficking case. Petitioner contends that testimony from Levphuk and the confidential informant would have effectively attacked Safanov's conduct, character, and credibility.

The Court holds that claim (VI) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  Petitioner has failed to identify the confidential informant, proffer the testimony he contends the witnesses would have provided, or provide affidavits from Levphuk or the confidential informant identifying the testimony.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VII), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to effectively cross-examine Detective Whitfield, one of the lead investigators of Sipe's murder.  Petitioner contends that Whitfield should have been asked if his departure from the police department before petitioner's trial was a result of his taping a conversation with

11

an FBI agent without permission; whether Whitfield understood the ethical implications of taping such a conversation; if Levphuk had promised him anything; whether the Commonwealth took any measures to ensure Safanov was reliable and not involved in the murder; and why the Commonwealth had sought Safanov's phone records.

The Court holds that claim (VII) satsfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcripts, demonstrates that Whitfield was cross-examined extensively. Petitioner has not alleged what answers Whitfield would have provided to additional questions. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In a portion of claim (VIII), petitioner alleges the Commonwealth withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). Petitioner contends that the Commonwealth did not provide counsel with the Wal-Mart receipt, which petitioner contends he gave to Detective Whitfield. Petitioner alleges the receipt would have established his alibi that he was in Ephrata, Pennsylvania at a time inconsistent with the Commonwealth's theory of the case.

12

The Court holds that this portion of claim (VIII) is barred because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. Slayton v. Parrigan, 215 Va. 27, 29-30, 205 S.E.2d 680, 682 (1974), cert. denied, 419 U.S. 1108 (1975).

In another portion of claim (VIII), petitioner alleges the Commonwealth violated its Brady obligation by failing to disclose information regarding a meeting that petitioner contends occurred between an Assistant United States Attorney and Safanov, and regarding follow-up correspondence, which petitioner contends occurred between Detective Whitfield and Levphuk. Petitioner argues that such information would have been valuable impeachment evidence. In support of his claim, petitioner references a transcript of an audiotape found in defense counsel's file, in which Detective Whitfield can be heard asking Levphuk to help him find Safanov.

The Court holds that petitioner has failed to establish that a Brady violation has occurred. Petitioner has not established that the alleged withheld evidence he contends exists, that it contained exculpatory information, or that it would have been valuable for impeachment purposes.

In claim (IX), petitioner alleges he was denied the effective

13

assistance of trial counsel because counsel failed to request the transcript, notes or report of the alleged meeting between Levphuk and Safanov, or any subsequent correspondence between Detective Whitfield and Levphuk.

The Court holds that claim (IX) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner has not established that a meeting between Levphuk and Safanov actually took place. He has not provided information regarding the substance of the alleged meeting or affidavits from Levphuk or Safanov demonstrating that they met. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (X), petitioner alleges the Commonwealth knowingly created "false impressions" that petitioner was a member of the "Russian Mafia" and was present at the Everharts' party. In addition, petitioner contends the Commonwealth knowingly presented false testimony by making Safanov their "star" witness despite knowing that he was not credible.

The Court holds that claim (X) is barred because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of

14

habeas corpus. Slayton, 215 Va. at 29-30, 205 S.E.2d at 682.

In claim (XI)(A), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to make a successful objection to the references to petitioner's alleged ties to the "Russian Mafia." Petitioner acknowledges that counsel argued that such evidence should not be admitted because petitioner was not Russian and there was no alleged connection between the "Russian Mafia" and the crime itself. Petitioner contends, however, that counsel did not attack the Commonwealth's argument that references to the "Russian Mafia" were not being offered for their truth, and should have argued that the trial court should weigh the probative value of the evidence against its likely prejudicial effect. Furthermore, counsel should have pointed out that no reference to the "Russian Mafia" was necessary for Hetrick to explain why he feared petitioner. Petitioner contends that, had counsel made proper objections, the trial court would have limited the references to the "Russian Mafia."

The Court holds that claim (XI)(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including pre-trial motions, transcripts and orders, demonstrates that trial counsel filed a motion in limine seeking to prohibit the Commonwealth from introducing evidence or making comments concerning the "Russian

15

Mafia."  Contrary to petitioner's claim, counsel argued in the motion that the comments were not relevant, were highly prejudicial, and that the probative value was "substantially outweighed" by the prejudicial impact.  Additionally, at the hearing on the motion in limine, counsel argued that references to the "Russian Mafia" should be excluded because petitioner is Ukrainian; has no connection to the "Russian Mafia" or other criminal organization; any connection was irrelevant to the Commonwealth's alleged motive for the murder; and such references would "inflame the jury's passion and focus them on issues that [we]re not at hand in this case."  Again contrary to petitioner's claim, counsel also argued that Hetrick could testify concerning why he was "scared or scared of retaliation" without referencing the "Russian Mafia." Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (XI)(B), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to move for a mistrial after a juror asked the bailiff whether petitioner knew her identity or location.  Petitioner contends that the question revealed that the jurors were no longer following the trial court's instructions and did not intend to base their verdict

16

solely on the evidence and the law.

The Court holds that claim (XI)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcripts, demonstrates that the trial court assured the jurors that the law requires that defense counsel be provided with the jurors' names, addresses, and occupations, but that "[a]s a matter of course, attorneys do not provide copies of this master list to their clients." This correct statement provided no basis for a mistrial. Furthermore, the instruction should have sufficed to quiet the jurors' concern, and jurors are presumed to follow the instructions of the trial court. Muhammad v. Commonwealth, 269 Va. 451, 524, 619 S.E.2d 16, 58 (2005). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (XI)(C), petitioner alleges he was denied the effective assistance of trial counsel because counsel unreasonably failed to interview jurors and present a post-trial motion arguing that jurors were so focused on the "Russian Mafia" that they feared for their lives. Petitioner contends that jurors feared personal repercussions as a result of their involvement in the case, and counsel should have discovered this information and presented it to

17

the trial court or included it in the argument on direct appeal.

The Court holds that claim (XI)(C) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Virginia courts "have adhered strictly to the general rule that the testimony of jurors should not be received to impeach their verdict." Caterpillar Tractor Co. v. Hulvey, 233 Va. 77, 82, 353 S.E.2d 747, 751 (1987). "Moreover, the unanimous verdict is the best evidence of each juror's opinion of the case." Id. Trial counsel's "failure" to interview jurors and present a post-trial motion arguing the jury was unduly influenced as a result of the testimony and evidence at trial was, therefore, a reasonable one. Furthermore, there is no evidence properly before this Court to support petitioner's claim that jurors were so focused on the "Russian Mafia" that they feared for their lives. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (XI)(D), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to rebut evidence regarding petitioner's connection to the "Russian Mafia" by asking Dan Comer about his belief that there was no "Russian Mafia" and that petitioner was not a member.

18

The Court holds that claim (XI)(D) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner has failed to present an affidavit from Comer to verify that Comer would have tesified as petitioner contends. Furthermore, petitioner fails to articulate how Comer's alleged "belief" would have been relevant or admissible. Thus, petitioner has failed to demonstrate that counsel's peformance was deficient or that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (XII), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to move for a mistrial when the Commonwealth "repeatedly and willfully violated the trial court's order not to make reference to Teleguz's alleged lack of emotion during pre-custodial questioning." Petitioner contends also that counsel's failure to present the testimony of a "cultural expert" to show that outward displays of emotion are unacceptable in Ukrainian society exacerbated the Commonwealth's suggestion that petitioner lacked remorse. Petitioner asserts that these references were prejudicial and there is a reasonable likelihood the trial court would have granted a mistrial had counsel moved for one.

The Court holds that claim (XII) satisfies neither the

"performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcripts, pre-trial motions and orders of the trial court, demonstrates that the trial court did not rule that the Commonwealth could not refer to petitioner's general "lack of emotion." Rather, the trial court initially denied petitioner's motion in limine to exclude evidence of petitioner's pre-custodial silence in response to questioning. The trial court further ruled that, before such evidence could be elicited, the court would revisit the issue outside the presence of the jury. Thereafter, during opening statements, the Commonwealth informed the jury that it intended to present evidence that petitioner showed no remorse when he was informed that his ex-girlfriend had been murdered. The trial court later ruled that petitioner's "lack of remorse" upon being informed of Sipe's murder had constituted an invocation of his right to remain silent and barred the Commonwealth from presenting such evidence at trial. The Commonwealth's last reference to petitioner's "lack of remorse" concerned only petitioner's demeanor during trial which was visible to the jury and did not implicate petitioner's right to remain silent. Petitioner has, therefore, failed to establish any violation of the trial court's ruling, or any valid legal basis upon which counsel could have objected. Furthermore, petitioner fails to proffer any

20

evidence to support his theory that a "cultural expert" would have testified as he contends. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (XIII)(A), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to object to the Commonwealth's "improper and prejudicial" statements during closing argument. Petitioner contends that the Commonwealth indicated that petitioner could arrange killings through the "Russian Mafia" even if incarcerated, and that this suggestion invited the jurors to decide the case based upon fear for their own personal safety and not upon the law and the evidence. Petitioner asserts that there is a reasonable likelihood that the result of the proceeding would have been different had the jurors not been in fear for their safety and for the safety of their families.

The Court holds that claim (XIII)(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcripts, demonstrates that during closing argument, the Commonwealth's attorney stated that petitioner was a future danger because "he can pick up a phone . . . and dial up a murder because he can call another Aleksey Safanov or another Edwin Gilkes or

21

another Michael Hetrick."  These were the facts of the case, not "improper" statements, and petitioner's assertion that the Commonwealth referenced the "Russian Mafia" during this argument is unsupported by the record.  The Commonwealth further argued that the "community" and petitioner's son needed protection from his future dangerousness.  Petitioner mischaracterizes these comments as a plea to the jurors' sense of personal safety rather than what they actually were: specific references to the community where the murder took place and the child, who was in another room as his mother was killed.  Furthermore, in petitioner's direct appeal, this Court specifically found "that the prosecutor's statements were not addressed to the jurors' safety and security, and even if that was a fair inference, the record does not support a conclusion that the jury was concerned about the issue. Even assuming that the jurors harbored sufficient concern about their safety the record does not reveal that such concern influenced their decision to recommend the death penalty."  Teleguz, 273 Va. at 495, 643 S.E.2d at 731.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (XIII)(B), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to

22

object when the Commonwealth referenced the "worth" of the victim's life during closing argument. Petitioner argues that because the jury had questioned the consequences of failing to reach a unanimous verdict, this was a close case, in which such arguments are prejudicial.

The Court holds that claim (XIII)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. This Court has previously held that "victim impact testimony is relevant to punishment in a capital murder prosecution in Virginia." Weeks v. Commonwealth, 248 Va. 460, 476, 450 S.E.2d 379, 389 (1994). The record, including the trial transcripts, demonstrates that the Commonwealth's comment about the "worth" of the victim's life was based upon victim impact evidence already in the record. Petitioner does not argue that the comments, standing alone, were factually inaccurate or unsupported by the record. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (XIV), petitioner alleges he was denied the effective assistance of counsel because counsel failed to ensure that the jurors were properly instructed. Petitioner proffers an affidavit from a juror indicating that the juror misunderstood the

23

instructions and believed that, upon a finding of both aggravating factors, death was presumed the appropriate sentence. Petitioner contends that counsel should have questioned the juror and raised this issue post-trial and on appeal.

The Court holds that claim (XIV) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner demonstrates only that a juror misunderstood the instructions, but he does not allege that the jurors were improperly instructed. Furthermore, the record, including the trial transcript, written jury instructions, and verdict forms, demonstrates that the jury was properly instructed. See Prieto v. Commonwealth, 278 Va. 366, 682 S.E.2d 910 (2009). Jurors are presumed to follow the trial court's instructions. Muhammad, 269 Va. at 524, 619 S.E.2d at 58. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (XV), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to present the testimony of petitioner's mental health expert at sentencing. Petitioner contends that the expert would have explained the effect petitioner's childhood had on his behavior, and counsel should have

24

informed the trial court about the importance of this testimony in order to get it admitted. Petitioner further alleges that counsel should have informed the trial court about a recent decision from the Circuit Court of the City of Norfolk, allowing a defendant in a capital murder case to present expert testimony after the trial court advised the jury that the defendant had failed to cooperate with the Commonwealth's expert.

The Court holds that claim (XV) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Code § 19.2-264.3:1 provides for expert testimony in support of a claim in mitigation in capital murder cases relating to the defendant's history, character, or mental condition. If a defendant chooses to present such testimony, the Commonwealth may seek its own evaluation. Code § 19.2-264.3:1(F)(1). Should the defendant refuse to be evaluated by the Commonwealth's expert, the trial court may admit evidence of such refusal or, in the discretion of the court, bar the defendant from presenting his expert evidence. Code § 19.2-264.3:1(F)(2). The record, including the trial transcripts, reveals that petitioner refused to cooperate with the Commonwealth's expert and that the trial court explained to petitioner the ramifications that could result from refusing to cooperate with the Commonwealth's expert, including the potential exclusion of his own expert's testimony,

and provided petitioner with another opportunity to be evaluated by the Commonwealth's expert. Petitioner again refused, and the trial court acted within its discretion in barring petitioner from presenting expert testimony. Although petitioner alleges trial counsel should have informed the trial court of a different jurisdiction's decision to admit a defendant's expert's testimony despite the defendant's refusal to cooperate with the Commonwealth's expert, petitioner can not demonstrate that such an argument would have altered the trial court's exercise of discretion in this case and does not allege how the sentencing outcome would have been different had his expert been allowed to testify. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (XVI), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to object to the trial court's response to the jury's question regarding the sentencing option of life imprisonment plus a fine. Petitioner asserts that the trial court's response to the jury's question, that in all likelihood petitioner would not be able to pay a fine while incarcerated, indicated that a fine would have no consequence and essentially limited the jury's sentencing options.

The Court holds that claim (XVI) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcripts, reveals that the trial court informed the jury that, "[a]s a practical matter a defendant who is incarcerated and is otherwise without means has no practical means of paying such a fine. However, if that inmate were to inherit a large sum of money or in some way come in to a portion of sums of money the Commonwealth would have a claim on those funds." Jurors are presumed to follow the instructions of the trial court. Muhammad, 269 Va. at 524, 619 S.E.2d at 58. Furthermore, this response demonstrated to the jury that a fine would have a consequence, as any amount of money obtained by the petitioner would be subject to seizure, did not foreclose the option of fining the petitioner, and certainly did not improperly limit the jury's choice as to sentence. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (XVII), petitioner alleges he was denied the effective assistance of trial counsel because counsel unreasonably failed to object to the trial court's response to a juror's concern regarding petitioner's potential access to the juror's contact

27

information, failed to propose a method to assure jurors that petitioner did not have access to their personal information, and failed to request the trial court re-open the evidence so that petitioner could present testimony regarding the inmate phone privileges.

The Court holds that claim (XVII) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcripts, demonstrates that the trial court assured the jurors that the law requires that defense counsel be provided with the jurors' names, addresses, and occupations, but that "[a]s a matter of course, attorneys do not provide copies of this master list to their clients." Petitioner does not suggest any legal grounds upon which counsel could have objected to this instruction. Furthermore, the instruction should have sufficed to quiet the jurors' concern, and jurors are presumed to follow the instructions of the trial court. Muhammad, 269 Va. at 524, 619 S.E.2d at 58. Petitioner also fails to proffer what evidence would have been gained from presenting testimony regarding inmate phone privileges. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

28

In claim (XVIII), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to insist on a ruling on his motion for a continuance after learning that Detective Whitfield was prepared to testify that Mark Moore had identified petitioner as someone he saw leaving Sipe's apartment in the days before the murder. Petitioner alleges Moore was the only witness who placed petitioner near the crime scene around the time of the murder, and the continuance would have allowed counsel time to gather evidence to impeach Moore and the investigator who showed him the photo lineup from which Moore identified petitioner.

The Court holds that claim (XVIII) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner was not charged with being the actual perpetrator of the wounds inflicted on Sipe. Therefore, impeaching Moore's testimony regarding whether petitioner was present at Sipe's and his child's apartment in the days prior to her murder would not have undermined the testimony that petitioner had hired others to do the killing. Furthermore, at the time Detective Whitfield testified that Moore identified petitioner from a photo lineup, Moore had already testified that he had done the same. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability

29

that, but for counsel's alleged errors, the result of the proceeding would have been different.

In a portion of claim (XIX), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to secure the testimony of two material witnesses: Kimberly Woods and Jessica Swartz. Petitioner contends that the witnesses would have testified that Hetrick had bragged about killing other people, had threatened them, and was comfortable with knives. Petitioner alleges counsel unreasonably failed to show that Swartz was a material witness requiring an out-of-state subpoena. Petitioner further alleges that, after the trial court ruled Woods' testimony irrelevant, counsel should have explained that the testimony would demonstrate that it was likely that Hetrick had decided to kill Sipe with a knife without petitioner's suggestion. Petitioner claims that the testimony would have rebutted the Commonwealth's assertion that petitioner planned even the smallest details of the murder. Petitioner further claims that the testimony would have rebutted the Commonwealth's arguments that the vileness of the crime be imputed to petitioner because he specified the way in which the crime was to be committed, and that petitioner was more culpable than Hetrick. Petitioner contends that had this evidence been admitted, the jury would not have found vileness, or would have assessed the moral responsibility for the crime differently

30

and rendered a different sentence.

The Court holds that this portion of claim (XIX) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcripts, the pre-trial motions and orders from both the Circuit Court of Rockingham County and the Pennsylvania court, demonstrates that both courts accepted petitioner's proffer that these witnesses were material. The Pennsylvania court declined to compel Swartz to travel to Virginia and testify because she would have been caused an "undue hardship." In response to the trial court's determination that a continuance would not be granted to secure Woods' presence because her testimony was irrelevant, counsel argued that her testimony would show that Hetrick had threatened to kill her before by "cut[ting] her throat," and that this would demonstrate that the plan to cut Sipe's throat in the instant case did not originate with petitioner. Furthermore, as the trial court held, the phrase "cut your throat" is not a term of art, and simply because Hetrick threatened to cut Woods' throat does not mean that it was Hetrick's idea alone to cut Sipe's throat. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

31

In another portion of claim (XIX), petitioner alleges he was denied the effective assistance of appellate counsel because counsel failed to preserve or adequately brief the issues related to Woods' proffered testimony.

The Court holds that this portion of claim (XIX) fails to satisfy the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to articulate how Woods' testimony would have been admissible, fails to demonstrate that it was relevant, and fails to proffer the valid legal arguments he contends counsel should have raised on appeal. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the appeal would have been different.

In claim (XX), petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to present risk assessment evidence to rebut the claim of future dangerousness during petitioner's sentencing hearing. Specifically, petitioner contends that counsel should have requested an expert on risk assessment to address the likelihood that petitioner would engage in violent behavior if sentenced to life imprisonment. Petitioner alleges that counsel's decision not to request such an expert was unreasonable in light of the fact that a risk assessment expert is routinely appointed in capital cases.

32

The Court holds that claim (XX) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to proffer the specific testimony such an expert would have provided. Furthermore, "a determination of future dangerousness revolves around an individual defendant and a specific crime," Porter v. Commonwealth, 276 Va. 203, 249, 661 S.E.2d 415, 438 (2008)(internal quotation marks omitted), and "what a person may expect in the penal system is not relevant mitigation evidence," Cherrix v. Commonwealth, 257 Va. 292, 310, 513 S.E.2d 642, 653 (1999). Therefore, the testimony petitioner alleges counsel should have presented would have been inadmissible. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In an unnumbered claim, petitioner alleges that "[a]ll allegations of error and prejudice are made both as individual and cumulative error with both individual and cumulative effect."

As addressed previously, petitioner has failed to demonstrate prejudice as a result of counsel's alleged errors. "Having rejected each of petitioner's individual claims, there is no support for the proposition that such actions when considered collectively have deprived petitioner of his constitutional right

33

to effective assistance of counsel."  Lenz v. Warden of the Sussex I State Prison, 267 Va. 318, 340, 593 S.E.2d 292, 305 (2004).

Upon consideration whereof, petitioner's motions for the appointment of a risk assessment expert, for the appointment of a cultural expert, for an evidentiary hearing, to compel disclosure of discovery and exculpatory information, and to set aside the conviction and sentence are denied.  Upon consideration whereof, the respondent's motion "to strike certain materials improperly submitted as affidavits" is denied.  The Court will, however, apply the appropriate evidentiary rules when considering the admissibility of the affidavits and of any statements contained in the affidavits.

Accordingly, the petition is dismissed.

This order shall be published in the Virginia Reports.

A Copy,

Teste:

Patricia L. Harrington, Clerk