**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-7441

JOHN R. HAYES, III,

Plaintiff – Appellant,

v.

MARK CARVER,

Defendant – Appellee.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Thomas D. Schroeder, Chief District Judge.  (1:16-cv-01100-TDS-LPA)

Argued:  January 30, 2019                           Decided:  April 22, 2019

Before GREGORY, Chief Judge, RICHARDSON, Circuit Judge, and DUNCAN, Senior Circuit Judge.

Affirmed by published opinion.  Chief Judge Gregory wrote the opinion, in which Judge Richardson and Judge Duncan joined.

**ARGUED:**  Raquel A. Macgregor, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellant.  Peter Andrew Regulski, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  S. Mark Rabil, Associate Clinical Professor of Law, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellant. Joshua H. Stein, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF NORTH CAROLINA, Raleigh, North Carolina, for Appellee.

GREGORY, Chief Judge:

Petitioner John R. Hayes, III, convicted of two counts of second-degree murder and sentenced to two consecutive life terms, appeals the district court's dismissal of his petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. We granted a certificate of appealability on his claim that he has made a showing of actual innocence such that the district court erred in dismissing his petition as untimely. Because Hayes has failed to meet the exacting standard for the procedural gateway claim of actual innocence, we affirm the district court's dismissal of the petition.

I.

On October 11, 1993, Hayes was arrested in Winston-Salem, North Carolina for the murders of Waddell Lynn Bitting and Stephen Joel Samuels. At trial, the State presented evidence that the shootings of Bitting and Samuels occurred on July 25, 1993, outside of an illegal "drink house" at 910 East 22nd Street in Winston-Salem. In the early morning hours, people who were in the drink house heard gunshots and ran outside to investigate. There were a large number of people outside, and numerous shots were fired. Samuels died in front of his yellow Nissan Maxima, which was parked by the driveway of 914 East 22nd Street, and Bitting's body was found on the porch of 922 East 22nd Street. *Id.* at 694, 730. A resident of that address called the police, and shots continued to be fired even after the police arrived.

The Winston-Salem Police Department investigated the shootings with Detective R.L. Barren as lead detective. At trial, the State presented the testimony of: Mary Geter,

Anita Jeter, Cynthia Coleman, Officer C.Y. Singletary, Detective T.E. Craven, I.D. Technician Lana Perry, Dr. Patrick Lantz, Anthony Samuels, and Detective Barren. Geter and Jeter testified that they were inside the drink house with Hayes when they heard shots coming from outside. The two women waited for a minute or two while everyone else, including Hayes, ran outside. They testified that they then walked outside and stood on the front porch of the drink house. According to Geter's and Jeter's testimony, Hayes was standing behind a blue car parked on the street in front of the house and then fired a gun multiple times down the street into a crowd. Coleman, a third eyewitness, testified that she saw a black male wearing a light-colored shirt standing next to the blue car in front of the drink house and that he fired a gun in the air and then lowered his arm to fire into a crowd on 22nd street. Detective Craven testified that twelve 9-millimeter shell casings and two .32 caliber shell casings were found at the scene. Dr. Lantz, a forensic pathologist testified as an expert witness that Bitting and Samuels were killed by medium caliber bullets. The murder weapon was never recovered.

The defense did not present any evidence. Hayes pleaded not guilty and was represented at trial by court-appointed attorney Warren Sparrow. On July 19, 1994, after a two-day trial, a jury in Forsyth County, North Carolina convicted Hayes of two counts of second-degree murder, and the trial court sentenced him to two consecutive life terms.

Hayes appealed the conviction to the North Carolina Court of Appeals, which affirmed his conviction and sentence on September 5, 1995. Hayes did not file any post-conviction motions between 1995 and 2013.

3

Between 2011 and 2012, the Forsyth District Attorney's Office provided over 100 pages of police and lab reports to the Innocence and Justice Clinic of the Wake Forest University School of Law. The Clinic then filed a motion to compel discovery on behalf of Hayes on February 12, 2013, which the state Superior Court denied. A few weeks later, Hayes filed a motion for appropriate relief and another motion for discovery. On March 27, 2013, the District Attorney disclosed over 1,000 pages of documents, seventeen audio recordings, photographs, and a crime scene video. Based on this discovery, Hayes filed an amended motion for appropriate relief on August 30, 2013. The proffered new material included witness statements regarding other shooters at the scene, evidence of a third shooting victim, and shell casings reportedly found on the drink house porch. It also included statements to the police by Geter, Jeter, and Coleman, which Hayes argued contradicted their testimony at trial. After conducting a hearing, the Superior Court denied Hayes's motion for appropriate relief on November 21, 2014. Hayes filed a petition for certiorari with the North Carolina Court of Appeals, which was denied on August 24, 2016.

Hayes filed a federal petition for writ of habeas corpus on September 2, 2016. The State moved to dismiss the petition as untimely and thus procedurally barred. Hayes argued that equitable tolling per the actual innocence gateway for procedurally defaulted claims should apply. The magistrate judge recommended that the petition be dismissed as untimely, and the district court agreed, entering an order and judgment granting the State's motion on September 30, 2017. The district court also denied a certificate of

appealability.  Hayes filed a notice of appeal on October 27, 2017.  We granted a certificate of appealability on Hayes's claim of actual innocence.

II.

A federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless "the prisoner demonstrates cause for the default and prejudice from the asserted error." *House v. Bell*, 547 U.S. 518, 536 (2006).  However, in *Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court recognized that in certain exceptional cases, a compelling showing of actual innocence would enable a federal court to consider the merits of a petitioner's otherwise defaulted claims.  In such a case, the Court held, new evidence "establish[es] sufficient doubt about [the petitioner's] guilt to justify the conclusion that his execution would be a miscarriage of justice *unless* his conviction was the product of a fair trial."  *Id.* at 861–62 (emphasis in original).

New reliable evidence of actual innocence creates a gateway for a habeas petitioner to present procedurally defaulted federal constitutional claims by allowing an equitable exception to the limitations provisions of 28 U.S.C. § 2244(d)(1) to prevent a fundamental miscarriage of justice. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).  A petitioner meets the threshold requirement if he "persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *Schlup*, 513 U.S. at 329.  "Courts have consistently emphasized that actual innocence for the purposes of *Schlup* is a procedural mechanism

5

rather than a substantive claim." *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (internal citation omitted). "In other words, although a petitioner claims actual innocence for the purposes of asserting a *Schlup* claim, this innocence claim does not by itself provide a basis for relief. Instead, his claim for relief relies critically on the validity of his procedurally defaulted claims." *Id.* (internal citation and quotation marks omitted).

A valid actual innocence claim "requires petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. A petitioner must also "demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice. If a petitioner passes through the *Schlup* gateway by satisfying this standard, the district court then considers, and reaches the merits of, all of the petitioner's procedurally defaulted claims." *Teleguz*, 689 F.3d at 329 (internal citations omitted). In evaluating the petitioner's claim, "the district court is not bound by the rules of admissibility that would govern at trial" and must consider "all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Schlup*, 513 U.S. at 327-28 (internal quotation marks omitted).

An actual innocence finding "requires a holistic judgment about all the evidence and its likely effect on reasonable jurors applying the reasonable-doubt standard." *House*, 547 U.S. at 539. (internal citation and quotation marks omitted). Based on the

6

total evidentiary record, the court must "make a probabilistic determination about what reasonable, properly instructed jurors would do. The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id.* at 538 (internal citations and quotation marks omitted). If the court finds that "more likely than not any reasonable juror would have reasonable doubt as to the petitioner's guilt, then the petitioner has satisfied the *Schlup* standard, and the district court must review the petitioner's procedurally defaulted claims." *Teleguz*, 689 F.3d at 328. This Court reviews *de novo* a district court's denial of relief in habeas corpus proceedings. *Id.* at 327.

III.

To enable a federal court to consider the merits of Hayes's otherwise defaulted claims, Hayes must support allegations of constitutional error with new, reliable evidence that was not proffered at trial. *Finch v. McKoy*, 914 F.3d 292, 298–299 (4th Cir. 2019) (internal citation omitted). He must also prove that in light of all the evidence, old and new, it is more likely than not that no reasonable juror would have voted to find him guilty beyond a reasonable doubt. *Id.* (internal citation omitted).

As to constitutional error, Hayes argues that the new disclosures by the State give rise to claims for violations of his constitutional rights under the Sixth and Fourteenth Amendments due to the State's presentation of or failure to correct misleading or incomplete evidence, the State's failure to disclose exculpatory and impeaching evidence, and ineffective assistance of counsel. The State is correct that the district court did not

7

address the merits of Hayes's constitutional claims, nor do we address the merits here. Rather, in reviewing Hayes's claim of actual innocence, our task is limited to simply determining whether Hayes has supported *allegations* of constitutional error–not whether he would ultimately prevail on those claims. *See Finch*, 914 F.3d at 299. Here, even assuming Hayes sufficiently supported allegations of constitutional error, he fails to prevail on his claim of actual innocence, because the totality of the evidence fails to meet the second prong of the exacting standard set forth in *Schlup*.

In reviewing all of the evidence in support of his actual innocence gateway claim, Hayes points to the following new evidence that was not disclosed to the jury at trial: (1) two shell casings reportedly found on the porch of the drink house; (2) impeachment evidence; (3) police interviews with Coleman; (4) police reports of a third shooting victim; and (5) witness statements to police.[1] Hayes argues that this new evidence weakens the State's narrative at trial such that it is probable that no reasonable juror could find him guilty of the murders beyond a reasonable doubt. Contrary to Hayes's arguments, however, none of this evidence contradicts, or even undermines, the essential testimony of the identifying witnesses or the State's other evidence such that it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt.

---

[1] While the parties dispute the reliability of the new evidence proffered by Hayes, we need not resolve that issue, because even assuming the reliability of Hayes's evidence, he has failed to demonstrate that "no reasonable juror would have convicted him in light of the new evidence." *McQuiggin*, 569 U.S. at 399 (internal citation and quotation marks omitted).

Unlike in *Finch v. McKoy*, where we found the actual innocence standard met, none of the three identifying witnesses in this case have ever expressed reluctance or uncertainty about their testimony at trial. 914 F.3d at 300. Nor does the minor impeachment evidence identified by Hayes cast doubt on the veracity of that testimony. Geter's and Jeter's statements to police indicate that Hayes had fired a large caliber firearm. At trial, Geter and Jeter testified that they were uncertain about the type of gun Hayes was shooting. Jeter told a detective that she worked in the drink house but testified at trial that she had never done so. Especially given that Geter and Jeter knew Hayes personally, these newly revealed statements to police do not, considered along with the totality of the evidence, cast doubt on the substance of these witnesses' identifying testimony, much less establish actual innocence. Nor do Coleman's statements to police regarding Hayes's appearance weaken her testimony such that it is more likely than not that no reasonable juror would have voted to convict Hayes–especially when considered in the context of all the evidence, both old and new, including the unchanged eyewitness, identifying testimony of Geter and Jeter.

The police reports of a third shooting victim and witness statements identifying additional shooters likewise do not establish Hayes's entitlement to the procedural gateway of actual innocence. While Hayes argues that this evidence would have fundamentally undermined the State's narrative at trial, we disagree. Indeed, the evidence at trial already indicated that there were multiple shooters and much gunfire at the scene (in addition to those shots fired by Hayes). None of the witness statements identified by Hayes contradict the testimony of the witnesses at trial, and even assuming

9

the third victim was shot by an additional shooter, this evidence does not demonstrate Hayes's innocence as to the murders of Bitting and Samuels.[2] The police reports and witness statements simply confirm what the jury already knew–that there were multiple shooters and shots fired at the chaotic scene of the crime.

Finally, the additional shell casings reportedly found on the porch do not establish actual innocence. Even assuming that the casings were indeed found on the porch, this does not necessarily contradict the evidence at trial, much less establish reasonable doubt as to Hayes's guilt. Given Coleman's testimony that the shooter initially fired into the air before slowly lowering his arm, it would have been entirely possible for some of the casings to fall on the porch.

Because none of the new evidence identified by Hayes contradicts the evidence of his guilt presented at trial, Hayes has failed to demonstrate that in light of new evidence, "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386 (internal citations and quotation marks omitted).

IV.

In conclusion, "it bears repeating that the *Schlup* standard is demanding and permits review only in the extraordinary case." *Bell*, 547 U.S. at 538 (internal citations

---

[2] As Hayes acknowledged at oral argument, the statement of Avlon Fryer implicating someone else in the shooting of Bitting and Samuels was later recanted. See J.A. 1533, 1536 (Fryer admitting that she lied about seeing two individuals named Demo and Sunshine shoot Bitting and Samuels and that she was in fact at home asleep at the time of the shootings).

10

and quotation marks omitted).  Hayes has failed to meet that demanding standard here.

Accordingly, we affirm the district court's dismissal of Hayes's petition on procedural grounds.

*AFFIRMED*