**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 3, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TERRY KENT HOLCOMB, II,

    Petitioner - Appellant,

v.

RICK WHITTEN,

    Respondent - Appellee.

No. 19-5033
(D.C. No. 4:16-CV-00159-TCK-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT***
_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

    Terry Kent Holcomb, II, an Oklahoma prisoner, appeals from the district court's order denying habeas relief under 28 U.S.C. § 2254.  We granted a certificate of appealability embracing two issues.  As to the first issue, we affirm the district court.  As to the second, we vacate the certificate of appealability as improvidently granted.

---

    * After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND & PROCEDURAL HISTORY

### A. Trial & Direct Appeal

Petitioner Holcomb was tried in Tulsa County District Court on five counts of sexually abusing his ten-year-old stepdaughter, "N.H." During Holcomb's defense case, the trial judge refused to permit his expert witnesses to give portions of their opinions. Specifically:

- Dr. Paul Shields, a psychologist and therapist, was not permitted to tell the jury that, according to his psychological tests, Holcomb was not likely to be a sex offender; and

- Dr. Michael Gottlieb, an expert in child abuse investigations, was not permitted to tell the jury that N.H.'s forensic examination lacked the clinical findings one might expect in light of the abuse alleged.

The jury convicted on all five counts.

On direct appeal, Holcomb argued that the trial court deprived him of his Sixth and Fourteenth Amendment rights to present a complete defense when it refused to allow Dr. Shields to offer his opinion regarding Holcomb's propensity to be a sex offender. Holcomb made no argument about Dr. Gottlieb's testimony. The Oklahoma Court of Criminal Appeals (OCCA) affirmed in full.

### B. State Postconviction Proceedings

Following his unsuccessful appeal, Holcomb filed a *pro se* application for postconviction relief in the state trial court, raising errors unrelated to the exclusion of Dr. Shields's and Dr. Gottlieb's testimony. He also generically requested an

2

evidentiary hearing.  The state trial court denied relief on all counts without holding a hearing.

Holcomb, still *pro se*, appealed to the OCCA.  The OCCA affirmed.

### C.    Section 2254 Proceedings in Federal Court

Having exhausted available state court procedures, Holcomb filed his § 2254 petition in the United States District Court for the Northern District of Oklahoma. An attorney represented Holcomb in this proceeding.

Holcomb's first claim for relief (Claim One) asserted denial of his right to put on a complete defense because the trial court "refus[ed] to allow him to put on four key pieces of evidence."  R. vol. 1, ECF No. 2 at 50.[1]  Only two of those pieces of evidence remain relevant to this appeal: (i) "[Holcomb] did not fit a sex offender profile," as Dr. Shields was prepared to testify; and (ii) "N.E.'s[2] physical exam was not consistent with studies of similar prepubescent children subjected to [the abuse alleged]," on which Dr. Gottlieb was prepared to testify.  *Id*.

The district court found that Holcomb had never presented the argument regarding Dr. Gottlieb to the Oklahoma courts.  *See Holcomb v. Whitten*, No.16-CV-0159-TCK-FHM, 2019 WL 1212095, at *4 (N.D. Okla. Mar. 14, 2019). The court further found that the Oklahoma courts would now refuse to consider the argument given Holcomb's failure to raise it earlier.  *Id*. at *4–5.  The court

---

[1] Volume 1 of the record is not consecutively paginated.  We will cite the district court CM/ECF number, and the page number in the CM/ECF header.

[2] Throughout the § 2254 petition, Holcomb erroneously refers to N.H. as "N.E."

accordingly applied the doctrine of anticipatory procedural bar to "deem [the argument] procedurally defaulted." *Id.* at *5.

The district court then turned to the complete-defense argument as it relates to Dr. Shields. Holcomb primarily contended that the OCCA failed to apply relevant Supreme Court case law. The district court disagreed: "Contrary to [Holcomb's] argument, the OCCA adjudicated his constitutional claim on the merits despite its failure to cite any federal law." *Id.* at *6 n.5. The court further found that the OCCA's reasoning was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. *Id.* at *7–8. The court accordingly denied relief on Claim One.

The district court also denied relief on a second claim, concerning ineffective assistance of appellate counsel (Claim Two). It held that Holcomb had not exhausted Claim Two in state court, and the claim was subject to anticipatory procedural bar.

The district court then turned to Holcomb's request for an evidentiary hearing. Holcomb had urged the district court to hear the "live testimony of [his] appellate counsel" when deciding Claim Two. R. vol. 1, ECF No. 2 at 65. Holcomb also stated, without elaboration, that "the testimony of Dr. Paul Shields should assist the court," *id.*, presumably referring to Claim One. Holcomb said nothing about an evidentiary hearing involving Dr. Gottlieb. Regardless, the district court found that an evidentiary hearing was unnecessary "[b]ecause [Holcomb] procedurally defaulted Claim Two and [the] portion[] of Claim One [regarding Dr. Gottlieb] and because § 2254(d) bars relief on the exhausted portion of Claim One [regarding Dr. Shields]."

4

2019 WL 1212095, at *10.

Lastly, the district court denied a certificate of appealability (COA).

### D.     This Court's Certificate of Appealability

Holcomb timely filed a motion with this court for a COA (COA Motion). The motion argued that the Oklahoma postconviction courts made unreasonable factual findings and erred in refusing to give him an evidentiary hearing. The motion also attacked the exclusion of Dr. Shields's and Dr. Gottlieb's testimony. Holcomb described the state trial court's decisions on these matters as "[b]ased . . . on an unreasonable determination of facts in light of evidence before it." COA Motion at 25. Finally, Holcomb declared himself "actually innocent," meaning he "should not have had anticipatory bars applied to his claims." *Id*. at 25, 26.

This court granted a COA "as to whether the district court erred in denying an evidentiary hearing on Mr. Holcomb's habeas claim involving improper exclusion of defense witnesses." Order, No. 19-5033, at 1 (10th Cir. Nov. 18, 2019). The court also appointed counsel for Holcomb for the merits stage of the appeal.

## II.    ANALYSIS

Our COA refers to "improper exclusion of defense witnesses." As the parties recognize, "defense witnesses" in this context can only refer to Drs. Shields and Gottlieb. Having further reviewed the matter, we find that our COA inappropriately focuses on whether the district court should have granted an evidentiary hearing. Thus, we must either reformulate or vacate the COA. We conclude that we should reformulate the COA as to Dr. Shields but vacate it as to Dr. Gottlieb.

5

### A. Dr. Shields

#### 1. The Proper Scope of the COA

If evidence was not before the state court, a federal court may not consider it when answering the question posed by 28 U.S.C. § 2254(d)(1), *i.e.*, was the state court's decision "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"? *See Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) ("[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.").

Here, as it relates to Dr. Shields, the OCCA adjudicated Holcomb's complete-defense claim on the merits. The district court therefore appropriately asked—without resort to an evidentiary hearing—whether the OCCA's resolution contradicted or unreasonably applied clearly established Supreme Court law on complete-defense claims.[3] The district court's answer was "no." Unless that ruling is wrong, we have no reason to ask whether Holcomb met the standard for an evidentiary hearing.

---

[3] Contrary to the COA Motion, a complete-defense claim raises legal issues that a federal habeas court reviews under § 2254(d)(1), not factual issues that the court reviews under § 2254(d)(2). *See Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (per curiam) (applying § 2254(d)(1) to complete-defense claim); *Paxton v. Ward*, 199 F.3d 1197, 1204, 1211–16 (10th Cir. 1999) (same). But even if § 2254(d)(2) applies, it explicitly directs the court to conduct its review "in light of the evidence presented in the State court proceeding." Thus, under (d)(1) or (d)(2), a federal habeas court may not consider evidence that was not before the state court.

6

We have discretion to "expand the COA to cover uncertified, underlying constitutional claims asserted by an appellant." *United States v. Shipp*, 589 F.3d 1084, 1087 (10th Cir. 2009). We exercise that discretion here. Whether the OCCA appropriately analyzed Holcomb's complete-defense claim as it relates to Dr. Shields is a matter that "reasonable jurists could debate," and "deserve[s] encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (describing the standard for granting a COA) (internal quotation marks omitted). We therefore reformulate our COA to encompass that issue. Moreover, although not within the COA as originally formulated, the parties briefed the merits of the OCCA's disposition, so it is squarely presented for our review.

2.  Whether 28 U.S.C. § 2254(d)(1) Requires this Court to Defer to the OCCA's Analysis Concerning Dr. Shields's Opinion

We review de novo the district court's ruling that the OCCA neither contradicted nor unreasonably applied clearly established Supreme Court precedent on the complete-defense question. *Littlejohn v. Trammell*, 704 F.3d 817, 825 (10th Cir. 2013).

"State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (brackets and internal quotation marks omitted). At the same time, "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Id*. (internal quotation marks omitted). "This right is abridged by evidence rules that infringe upon a weighty interest of the

7

accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Id*. (brackets and internal quotation marks omitted).

The OCCA understood Holcomb's "Proposition II" on direct appeal to be raising a complete-defense claim:

> We find in Proposition II that Holcomb was not denied the opportunity to present a meaningful defense.   Holcomb argues this decision [to exclude Dr. Shields's opinion about Holcomb's likelihood of being a sex offender] denied him a meaningful opportunity to present a complete defense. *Summers v. State*, 2010 OK CR 5, ¶ 62, 231 P.3d 125, 145.

R. vol. 2a at D45.

Apart from using words like "meaningful defense" and "complete defense," the citation to the OCCA's *Summers* decision further demonstrates that the OCCA recognized the nature of the claim.  The cited paragraph from *Summers* quotes the Supreme Court's *Holmes* decision for the principles of a complete-defense claim. Thus, the OCCA understood that Holcomb asserted a violation of his federal constitutional right to present a complete defense, and the OCCA indirectly identified Supreme Court case law relevant to adjudicating that claim.

The rest of the OCCA's analysis of this issue, however, leads us to question whether the OCCA applied the case law it had identified.  That analysis focuses entirely on whether Dr. Shields's opinion was admissible under Oklahoma's rules of evidence:

> Admission of evidence is within the trial court's discretion. *Jones v. State*, 2009 OK CR 1, ¶ 39, 201 P.3d 869, 881. When presenting defense witnesses the defendant must

8

comply with rules of procedure and evidence. *Simpson v. State*, 2010 OK CR 6, ¶ 9, 230 P.3d 888, 895. We will not disturb a trial court's ruling excluding witness testimony without a clear showing of abuse and resulting prejudice to the defendant. *Id.* The record shows Holcomb wanted his expert to testify that, in his opinion, Holcomb was not a sex offender. This would directly invade the province of the jury by telling jurors what result to reach. Expert opinion testimony is admissible when it helps jurors understand the facts. 12 O.S.2011, § 2702 [Oklahoma's equivalent to Fed. R. Evid. 702]. Expert opinion may, under some circumstances, embrace an ultimate fact, but may not simply tell the jury what result to reach. *Day v. State*, 2013 OK CR 8, ¶ 11, 303 P.3d 291, 297, *r'hng denied*[,] 2013 OK CR 15, 316 P.3d 931; *Ball v. State*, 2007 OK CR 42, ¶ 15, 173 P.3d 81, 86. As the evidence was not admissible, the trial court's refusal to admit it did not deny Holcomb an opportunity to present a meaningful defense. *Simpson*, 2010 OK CR 6, ¶ 9, 230 P.3d at 895.

*Id.*

The state argues that, through this reasoning, the OCCA "implicitly found that the [Oklahoma] evidentiary rule which prohibited the admission of the proffered evidence served a legitimate purpose and was not disproportionate to the end it promotes." Aplee. Answer Br. at 28. We are not convinced.

The problem is the OCCA's two citations to its *Simpson* decision, which frame its analysis. *Simpson* says that "[w]hether [the defendant] was denied the right to present a defense ultimately turns on whether the evidence at issue was admissible." 230 P.3d at 895. This is essentially the opposite of the Supreme Court's holdings on this issue. The point of the right to a complete defense (at least this aspect of it) is that the Constitution occasionally requires evidence to be admitted even when a rule of evidence would exclude it. *See Holmes*, 547 U.S. at 324. Yet, following *Simpson*,

9

the OCCA analyzed only whether the trial court made a proper evidentiary ruling, not whether the evidentiary rule itself was arbitrary or disproportionate to the end it was designed to promote.

In sum, the OCCA correctly labeled the right at stake, but analyzed it in a manner "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### 3. De Novo Review

This court may "consider [a habeas] petitioner's claim on the merits and without deferring to the state court's [analysis]" if "either the reasoning or the result of the state-court decision contradicts [Supreme Court case law]." *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007) (internal quotation marks and brackets omitted; other bracketed insertions added for clarity). Here, the OCCA's reasoning contradicts Supreme Court case law, so we review Holcomb's complete-defense claim de novo. This requires us to review Dr. Shields's testimony and the trial court's rulings in more detail.

After establishing his credentials as a licensed marriage and family therapist, Dr. Shields testified that Holcomb became one of his counseling patients after being charged with sexually assaulting N.H. Defense counsel and Dr. Shields then had this exchange:

> Q. Now . . . as part of your practice, do you generally work with sex offenders?
>
> A. No, I do not.

10

Q. . . . [W]hen you're dealing with this subject matter of
   sex offenders or sex abuse matters, where would your
   practice typically steer you?

A. Probably about four or five times a year, I will get a
   call or have a case where a sex offender is involved.
   Typically, I will review that, in some cases will
   evaluate, and typically will refer them out.

R. vol. 2b at 911. Dr. Shields then testified about receiving training to "identify" sex

offenders on "a spectrum of . . . least worst case, to worst worse [*sic*] case." *Id*. at

914.

From here to the end of Dr. Shields's testimony, courtroom proceedings cycled

through a pattern of (1) a bench conference, at which the judge and the attorneys

would discuss where Dr. Shields's testimony was headed; (2) a ruling from the judge

limiting the testimony; (3) further testimony from Dr. Shields on the topic of the tests

he administers to prospective patients, as defense counsel probed the limits of the

judge's ruling; leading to (4) another bench conference. Thus, the judge ruled

multiple times on the admissibility of Dr. Shields's testimony about sex offender

testing.

The judge's most detailed ruling came after a bench conference proffer from

defense counsel, where counsel stated that

I think [Dr. Shields] would testify that he evaluates any
patient who is—a prospective patient, rather, that has
issues of sex offender issues, he looks at some
probabilities, and then he—as he was starting to describe,
he looks at false positives, false negatives, assumes guilt
for the purpose of the evaluation process, and then goes
through trying to eliminate any of those possibilities as
being present in that patient before he will work with them.

11

. . .

> And by going through that process, that helps him decide whether to keep the person as a patient and how to deal with them.

*Id*. at 945.  To this, the trial judge responded,

> Well, let me just say it this way; that I'm familiar with psychosexual evaluations in presentence investigations reports.  They're a tool, perhaps, in sentencing and structuring treatment, but I have not seen nor do I imagine that there is a body of scientific knowledge that would allow a psychologist or psychiatrist to testify based on testing and observation of a propensity or a predictability of sexual offending.
>
> Now, that body of research may be out there somewhere, but it's not available in this trial today.
>
> The other thing is that the jury would likely be inclined to take that opinion, even though it was just a screening evaluation, as some evidence of probative evidence that the defendant did not commit the offense.  I simply can't allow it.

*Id*. at 946.

This ruling contains two bases for excluding Dr. Shields's testimony: (1) insufficient support for the opinion to be given, *see* Okla. Stat. tit. 12, § 2702(2) (expert testimony must be "the product of reliable principles and methods"); and (2) invading the province of the jury.  The state does not argue that the trial judge's insufficient-support ruling independently justifies exclusion.  We therefore focus solely on the trial judge's province-of-the-jury ruling.

Under these circumstances we need not determine whether the rule against invading the province of the jury was applied in such an arbitrary or disproportionate

12

manner as to violate Holcomb's right to present a complete defense. Despite the state's objections, the jury still heard that Dr. Shields has training to identify sex offenders, and that he does not treat sex offenders. Moreover, defense counsel eventually asked Dr. Shields, without objection, "So, you decided to keep Mr. Holcomb as a patient, and then began a course of treatment; is that correct?" R. vol. 2b at 937. Dr. Shields answered, "That's correct." *Id*. Thus, the jurors heard enough to make the connection that Dr. Shields—who held himself out as a trained expert in identifying sex offenders—did not believe that Holcomb was a sex offender. This was the essence of what counsel sought to present through his offer of proof. Holcomb has not cited a case to us in which the right to a complete defense was deemed violated when the evidence needed to support the defense was admitted, just not in the form the defendant preferred. We hold, then, that the trial court judge did not violate the Constitution by forbidding Dr. Shields from offering an explicit opinion about Holcomb's likelihood of being a sex offender.

On this basis, we affirm the district court's denial of habeas relief on this issue.[4]

### B.    Dr. Gottlieb

The district court found that Holcomb procedurally defaulted his complete-defense claim as to Dr. Gottlieb, having never raised it in state court. We

---

[4] We do not mean to imply that we would find a complete-defense violation had the judge prevented or struck the testimony we emphasize above. We simply note that, on this record, the jurors heard enough to draw the inference that Holcomb wanted them to draw, fatally undermining his complete-defense argument.

13

have reviewed the record and agree that Holcomb never presented his complete-defense claim, as it relates to Dr. Gottlieb, to the Oklahoma courts. Holcomb therefore did not "exhaust[] the remedies available in the courts of [his] State," 28 U.S.C. § 2254(b)(1)(A), and so there appears to be no basis for considering an evidentiary hearing as contemplated by our COA.

Perhaps trying to supply us with a legal footing for considering this claim despite the default, Holcomb invokes the doctrine of actual innocence. "As a gateway, a claim of actual innocence enables habeas petitioners to overcome a procedural bar in order to assert distinct claims for constitutional violations." *Farrar v. Raemisch*, 924 F.3d 1126, 1130 (10th Cir. 2019) (brackets and internal quotation marks omitted), *cert. denied sub nom. Farrar v. Williams*, No. 19-953, 2020 WL 5882218 (U.S. Oct. 5, 2020). Various courts have held that § 2254's normal limits on evidentiary hearings do not restrict a federal court's ability to hold an evidentiary hearing to develop the evidence relevant to actual innocence. *See Teleguz v. Pearson*, 689 F.3d 322, 331 n.6 (4th Cir. 2012) (citing decisions to this effect). Holcomb accordingly argues that the district court should have found that Dr. Gottlieb's excluded testimony, by itself, satisfies the actual innocence standard, or at least that the district court should have heard Dr. Gottlieb's testimony as part of deciding whether to excuse procedural default.

The problem with this argument is that Holcomb never asked the district court to conduct an actual-innocence inquiry (related to Dr. Gottlieb's testimony or

14

otherwise).[5]  "Absent special circumstances, we will not reverse on a ground not raised below," *Hutton Contracting Co. v. City of Coffeyville*, 487 F.3d 772, 782 (10th Cir. 2007), and we see no special circumstances here.  "Therefore, we need not address the issue."  *Id*.

On rare occasions we have concluded that we should vacate a COA, or part of it, as improvidently granted.  *See, e.g.*, *Bowen v. Kansas*, 295 F. App'x 260, 265 (10th Cir. 2008); *Hughes v. Beck*, 161 F. App'x 797, 800 (10th Cir. 2006) (per curiam).  Because we can see no basis for reaching Holcomb's procedurally defaulted claim as to Dr. Gottlieb, we vacate the COA as it relates to exclusion of his testimony.

## III.    CONCLUSION

We affirm the district court's denial of § 2254 relief as to the excluded testimony of Dr. Shields and vacate the COA as to the excluded testimony of Dr. Gottlieb.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[5] Holcomb's § 2254 petition did not invoke the actual-innocence doctrine.  *See* R. vol. 1, ECF No. 2.  The state nonetheless argued against any actual-innocence exception to procedural default.  *See id*., ECF No. 14 at 22–23, 32.  Holcomb still said nothing about actual innocence in his reply brief.  *See id*., ECF No. 20.