UNITED STATES COURT OF APPEALS

**January 25, 2022**

**TENTH CIRCUIT**

TIMOTHY P. NICHOLLS,

    Petitioner - Appellant,

v.

JEFF LONG, Warden;[*] ATTORNEY
GENERAL OF THE STATE OF
COLORADO,

    Respondents - Appellees.

No. 20-1159
(D.C. No.  1:17-CV-00044-CMA)
(D. Colo.)

## ORDER DENYING CERTIFICATE OF APPEALABILITY[**]

Before **HOLMES**, **BACHARACH**, and **MORITZ**, Circuit Judges.

Represented by counsel, Timothy Nicholls requests a certificate of

appealability ("COA") to appeal from the district court's denial of his habeas

corpus petition filed pursuant to 28 U.S.C. § 2254—particularly the denial of his

request for an evidentiary hearing on his actual-innocence gateway claim, the

denial of his motion for appointment of counsel, and the denial of two of his

---

    [*]    Pursuant to Fed. R. App. P. 43(c)(2), Jeff Long is substituted as
Respondent-Appellee for Matthew Hansen, the former warden in this action.

    [**]    This Order is not binding precedent, except under the doctrines of law
of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

habeas claims as non-cognizable in habeas proceedings.  Exercising jurisdiction under 28 U.S.C. § 1291, we **deny** the COA application and **dismiss** the matter, insofar as Mr. Nicholls's appeal relates to the district court's denial of his request for an evidentiary hearing and denial of two of his claims as non-cognizable in habeas proceedings.  Concerning the district court's order denying Mr. Nicholls's motion for appointment of counsel, we **affirm**.[1]

## I

In 2007, Mr. Nicholls was convicted of three counts of first degree murder and arson, among other offenses.  He was sentenced to three life terms without the possibility of parole.

The pertinent evidence at trial showed that Mr. Nicholls "burned down his house," killing his three young children in the process, "to collect insurance."  R., Vol. II, at 728 (Dist. Ct. Order, dated Mar. 23, 2020) (quoting R., Vol. I, at 510 (*People v. Nicholls*, No. 07CA1248 (Colo. App. Jan. 14, 2010) (unpublished) (*Nicholls I*))).

---

[1]     Mr. Nicholls "need not obtain a COA to appeal the district court's denial of [his] motion to appoint counsel." *United States v. Page*, 636 F. App'x 447, 448 n.2 (10th Cir. 2016) (unpublished) (citing *Harbison v. Bell*, 556 U.S. 180, 183 (2009)); *see also Harbison*, 556 U.S. at 183 (holding that a COA is not required to appeal from the denial of a motion to appoint counsel because 28 U.S.C. § 2253(c)(1)(A) only requires a COA for appeals from "final orders that dispose of the merits of a habeas corpus proceeding" and "[a]n order that merely . . . denies a motion for appointment of counsel . . . is not such an order").

The prosecution contended that Mr. Nicholls committed arson and murder together with his wife, introducing proof that generally included "(1) physical evidence and expert testimony that the fire had been set intentionally, (2) testimony by a jailhouse witness that [Mr. Nicholls] admitted [to] key details (consistent with the physical evidence) of how the fire was set, and (3) evidence of [Mr. Nicholls's] own varied explanations for the fire that were internally contradictory and at odds with the physical evidence." *Id.* (quoting *Nicholls I*, No. 07CA1248 at 1). More specifically, the prosecution offered the following: testimony from Hiram Church, Mr. Nicholls's cellmate, that he had confessed; evidence that Mr. Nicholls and his wife were in significant debt, had serious drug issues, and had failing businesses; evidence that the Nichollses often set large fires in the front of their house; evidence that Deborah Nicholls, Mr. Nicholls's wife, exhibited unusual behavior at the crime scene, including a lack of concern for her children's well-being; evidence that Deborah Nicholls did not attend the children's funeral; Mr. Nicholls's changing and inconsistent statements regarding the fire which also did not fit with the evidence;[2] and forensic evidence and testimony by

---

[2]    The state trial court recounted that Mr. Nicholls "exhibited extraordinary difficulty providing direct answers to most questions asked of him in cross-examination." R., Vol. I, at 377 (State Trial Court Order, dated Apr. 9, 2014). "In all of the statements made prior to trial and including his trial testimony . . . he was markedly evasive." *Id.* "To the extent a straight answer could be secured, it was very often materially inconsistent with one of his numerous prior statements." *Id.*

3

an insurance company investigator and two city fire investigators establishing that they could not find an innocent explanation for the fire and determining early on in their investigations that the likely cause of the fire was arson.

The Colorado Court of Appeals ("CCA") affirmed Mr. Nicholls's conviction on direct appeal in *Nicholls I*. Both the Colorado Supreme Court and the United States Supreme Court denied Mr. Nicholls a writ of certiorari. Right after, Mr. Nicholls filed a motion for sentence reconsideration with the trial court, which was subsequently denied but not appealed by Mr. Nicholls.

On November 17, 2011, Mr. Nicholls filed a pro se postconviction motion and supporting brief under Rule 35(c) of the Colorado Rules of Criminal Procedure, which was later supplemented by postconviction counsel. A state trial court denied that motion, and the CCA affirmed that decision in *People v. Nicholls*, No. 14CA0972 (Colo. App. Dec. 24, 2015) (unpublished) (*Nicholls III*).[3] *See* R., Vol. I, at 304–16 (*Nicholls III*). Five years later, on August 8, 2016, Mr. Nicholls filed a second pro se Rule 35(c) motion, which the state trial court also denied; the CCA affirmed in *People v. Nicholls*, No. 16CA1997 (Colo. App. Sept. 20, 2018) (unpublished) (*Nicholls IV*). *See* R., Vol. II, at 522–36 (*Nicholls IV*).

---

[3]    Before the CCA's disposition of *Nicholls III*, Mr. Nicholls had filed a motion seeking return of personal property, which was denied; the CCA affirmed that decision in *People v. Nicholls*, No. 11CA2581 (Colo. App. Jan. 31, 2013) (unpublished) (*Nicholls II*). *Nicholls II* is not relevant to our review of this matter.

While *Nicholls IV* was pending, on January 3, 2017, Mr. Nicholls filed pro se his § 2254 petition with the district court, asserting: (1) that his counsel provided constitutionally ineffective assistance by counsel's purported failure to ask for a pretrial *Shreck/Daubert* hearing;[4] and that the Colorado state courts erred by (2) relying on an unreasonable determination of the facts when they denied his newly discovered evidence claim; (3) misapplying federal law when they denied that same claim; (4) misapplying federal law when they denied his judge-shopping claim; and (5) misapplying federal law in denying his claim that the trial court wrongfully permitted the grand jury's indictment to be amended. Mr. Nicholls also asserted that he was (6) actually innocent of the charges. *See* R., Vol. I, at 7–33 (Pet. for Writ of Habeas Corpus, filed Jan. 3, 2017).

After Mr. Nicholls and the State filed their briefs, the district court partially rejected Mr. Nicholls's petition. Particularly, the district court dismissed claims two and three as not cognizable on federal habeas review, and claim one as procedurally defaulted—absent Mr. Nicholls's showing of actual innocence of the substantive offense. The district court, then, ordered the government to file an answer that would fully address the merits of claims one, four, and five.

After reviewing the additional briefing and state-court records, the district

---

[4]    *See generally People v. Shreck*, 22 P.3d 68 (Colo. 2001); *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993).

5

court denied Mr. Nicholls's request for an evidentiary hearing, his motion to appoint counsel, and his § 2254 petition. The district court also denied a COA.

This appeal followed. Mr. Nicholls asks us to grant a COA. He claims that the district court abused its discretion in denying him an evidentiary hearing on his actual-innocence gateway claim, and that, even if an evidentiary hearing was not warranted, the court still abused its discretion in declining to appoint counsel to represent him. Lastly, Mr. Nicholls argues that the district court erred by denying his second and third claims—which he now describes, singularly, as a due-process claim—on the ground that it was not cognizable in federal habeas proceedings.

## II

Mr. Nicholls must obtain a COA before we may review the merits of his appeal (a) from the district court's rejection of his request for an evidentiary hearing on his actual-innocence gateway claim and (b) the court's rejection of his second and third claims as non-cognizable under federal habeas law. *See* 28 U.S.C. § 2253(c)(1)(A); *Clark v. Oklahoma*, 468 F.3d 711, 713 (10th Cir. 2006) ("A COA is a jurisdictional pre-requisite to our review." (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003))). We may grant a COA only if Mr. Nicholls "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

In its seminal decision, *Slack v. McDaniel*, the Supreme Court shed light on

the showing required to satisfy this statutory standard:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

529 U.S. 473, 484 (2000).  Likewise,

> when the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue (and an appeal of the district court's order may be taken) if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Id.* at 478.

Because the COA inquiry, as the Court has defined it, "is not coextensive with a merits analysis," the "only question" concerning a district court's rejection of purported constitutional claims "is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  *Buck v. Davis*, --- U.S. ----, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El*, 537 U.S. at 327).  In fact, if a court of appeals "first decid[es] the merits of an appeal, and then justif[ies] its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction."  *Id.* (quoting *Miller-El*, 537 U.S. at 336–37).

Applying this standard, we deny Mr. Nicholls a COA.[5]

## A

### 1

Mr. Nicholls argues that he is actually innocent and that certain newly found evidence is "more than sufficient to warrant an evidentiary hearing." Aplt.'s Opening Br. at 54. Specifically, Mr. Nicholls claims that "[r]ecent advances in the science underlying fire investigations have exposed the unreliability" of the prosecution's experts—particularly Dr. John DeHaan, whom he describes as the "prosecution's most significant fire-science expert"—as well as the unreliability of the "assumptions and methodology" that were used to find that the fire in Mr. Nicholls's home had been deliberately set. *Id.* at 47, 54. In particular, Mr. Nicholls notes that Dr. DeHaan used faulty "negative corpus" methodology and also "received significant criticism from the ethics committees of two major professional associations for providing unreliable opinions based on hand calculations similar to what he performed here." *Id.* at 54.

---

[5]    Although Mr. Nicholls needs a COA before we can resolve two of the three issues of his appeal, he largely frames his arguments as requests for merits relief. We nevertheless consider his arguments with our eyes fixed on the task at hand—determining whether he warrants a COA.

Mr. Nicholls additionally avers that certain evidence that the prosecution introduced was misleading, unreliable, and contrary to scientific advances in fire investigation science: specifically, referring to a prosecution witness's testimony, indicating that a fire-accelerant detection dog had a 100% accuracy rate, the admission of evidence about dog alerts—despite "no reliable laboratory confirmation of the presence of ignitable liquid residue" in the crime scene—and testimony regarding xylenes, a highly flammable chemical that could aid in determining the location of accelerants in fire investigations. *Id.* at 54–55.

**2**

When a habeas claim is procedurally defaulted—as the district court found to be true in the case of Mr. Nicholls's ineffective-assistance claim (claim one)—the federal habeas court may still address the merits of the claim if not doing so "will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice," means that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986). "[T]he fundamental miscarriage of justice exception seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass," to argue the merits of a procedurally defaulted habeas claim. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In other words, when a petitioner with a procedurally barred habeas claim "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316. These *Schlup* claims are rarely granted, in light of the demanding standard the Supreme Court has imposed. *See McQuiggin*, 569 U.S. at 386; *accord House v. Bell*, 547 U.S. 518, 537–38 (2006).

To satisfy the rigorous *Schlup* standard, a claim of actual innocence must be both "credible" and "compelling." *See House*, 547 U.S. at 522, 537. For a *Schlup* claim to be "compelling," the petitioner must demonstrate that, "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *Id.* at 538. For a *Schlup* claim to be "credible," the petitioner is required "to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

10

evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

"Because such evidence is obviously unavailable in the vast majority of

cases, claims of actual innocence are rarely successful." *Id.* In light of these

standards, the Supreme Court instructs that a district court

> must assess the probative force of the newly presented evidence
> in connection with the evidence of guilt adduced at trial.
> Obviously, the Court is not required to test the new evidence by
> a standard appropriate for deciding a motion for summary
> judgment. Instead, the court may consider how the timing of the
> submission and the likely credibility of the affiants bear on the
> probable reliability of that evidence.

*Id*. at 331–32 (citations omitted).

Despite these ample instructions, as one of our sister Circuits has concluded,

there is seemingly "[n]o controlling legal standard [that] exists regarding whether

the credibility assessment contemplated in *Schlup* requires an evidentiary hearing

and if so, under what circumstances."[6] *Stewart v. Cate*, 757 F.3d 929, 941 (9th

---

[6] Because, in substance, a *Schlup* claim is *not* a habeas claim that seeks merits relief, *see Schlup*, 513 U.S. at 315 (explaining that a *Schlup* "claim of innocence is thus 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have'" the review of other constitutional claims (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993))), the hurdles and restrictions imposed by 28 U.S.C. § 2254(e)(2) are not applicable to a petitioner's request for an evidentiary hearing regarding a *Schlup* claim, *see House*, 547 U.S. at 539 (noting that "a threshold for obtaining an evidentiary hearing on claims the petitioner failed to develop in state court, § 2254(e)(2)[,]" is a "provision" that does not relate to "the type of petition at issue here—a first federal habeas petition seeking consideration of defaulted claims based on a showing of actual innocence"); *accord Teleguz v. Pearson*, 689 F.3d 322, 331 n.6 (4th Cir. 2012) (collecting cases to explain that "[o]ur sister circuits considering whether the

Cir. 2014); *accord Godine v. Montgomery*, No. 16-CV-2534-ODW-KS, 2019 WL 982412, at \*20 (C.D. Cal., Jan. 7, 2019); *see also Arnold v. Dittmann*, 901 F.3d 830, 842 (7th Cir. 2018) (stating, without explicitly pointing to a relevant legal standard, that the petitioner "has a *plausible* claim of actual innocence entitling him to an evidentiary hearing," and remanding the case to the district court to hold such a hearing (emphasis added)); *cf. Teleguz v. Pearson*, 689 F.3d 322, 331 (4th Cir. 2012) (remanding the case to the district court to "address whether [the petitioner] should be granted an evidentiary hearing," without giving any further instructions aside from directing the court to "consider the particular facts raised by the petitioner in support of his actual innocence claim in determining whether an evidentiary hearing is warranted").

Mr. Nicholls himself does not provide caselaw specifically articulating the legal standards to be used to determine whether an evidentiary hearing is warranted for a *Schlup* claim. *See* Aplt.'s Opening Br. at 46–47. He effectively suggests that the operative standard is the standard we have fashioned in the context of addressing the merits of certain postconviction claims; that is, "an evidentiary hearing is warranted where 'the record . . . is inadequate to resolve the issue,' and [the] petitioner 'presented considerable evidence supporting his

---

limitation on evidentiary hearings in § 2254(e)(2) applies to *Schlup* claims have overwhelmingly found that it does not").

12

claims,' or when a party 'has alleged facts that, if true, would entitle him to relief.'" *Id.* (first quoting *United States v. Barrett*, 797 F.3d 1207, 1224 (10th Cir. 2015); then quoting *Wilson v. Sirmons*, 536 F.3d 1064, 1096 (10th Cir. 2008)). Somewhat similarly, in *Stewart*, the Ninth Circuit sought guidance regarding the appropriate standard to apply in deciding whether to grant an evidentiary hearing from the standards it had previously applied in other contexts in assessing evidentiary-hearing requests. *See Stewart*, 757 F.3d at 941 (noting, after observing the lack of a controlling legal standard, that "[g]enerally, in th[e] [Ninth] Circuit, 'a habeas petitioner should receive an evidentiary hearing when he makes "a good-faith allegation that would, if true, entitle him to equitable tolling."'" (quoting *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006))).

We need not definitively opine on this matter here. As we discuss further *infra*, even under searching de novo review, the district court determined on the existing record that Mr. Nicholls's *Schlup* actual-innocence claim lacked merit. And we conclude that reasonable jurists would not debate the correctness of this determination. It logically follows that, irrespective of the reasonably conceivable elements of the standard for an evidentiary hearing for a *Schlup* claim—including the elements of the standard Mr. Nicholls identified—we discern no possibility that reasonable jurists would conclude that the district court erred in denying Mr. Nicholls an evidentiary hearing. That is to say, because reasonable jurists would

13

not debate the district court's resolution of the claim on the existing record, we have no reason to believe that they would debate the court's denial of an evidentiary hearing regarding that claim.

### 3

Reflecting similar logic, the district court based its denial of an evidentiary hearing on its conclusion—after a thorough analysis under de novo review—that Mr. Nicholls's actual-innocence gateway claim lacked merit.[7]  In particular, the court concluded that Mr. Nicholls's *Schlup* claim failed because Mr. Nicholls's purportedly "new evidence . . . does not affirmatively demonstrate his innocence." R., Vol. II, at 760.

---

[7]    Because the evidence Mr. Nicholls presented to the district court largely had been previously considered by the state courts and had been the subject of state-court factual findings, the State argued that the district court should defer to the state courts' factual findings pursuant to 28 U.S.C. § 2254(e)(1). *See* R., Vol. II, at 758.  Unaware of any controlling Tenth Circuit precedent on this subject, the district court declined to opine on whether deference to state-court factual findings is due under § 2254(e)(1) when considering *Schlup* claims; instead, it concluded that, even absent such deference—under searching de novo review—Mr. Nicholls could not prevail. *See id.* at 758–59.  We note that, since the district court entered its order, we have held that the presumption of correctness contemplated in § 2254(e)(1) *does* apply to actual-innocence gateway claims. *See Fontenot v. Crow*, 4 F.4th 982, 1034 (10th Cir. 2021), *petition for cert. filed*, No. 21-970 (S. Ct. Jan. 6, 2022).  We see no need, however, to apply *Fontenot*'s holding in our COA assessment of the district court's ruling.  Because we conclude that reasonable jurists would not debate the correctness of the district court's determination—under searching de novo review—that Mr. Nicholls's actual-innocence gateway claim is without merit, we perforce would reach the same conclusion if we gave deference to the state courts' factual findings under *Fontenot*'s holding.

We do not believe that reasonable jurists would debate the correctness of the district court's assessment of Mr. Nicholls's actual-innocence gateway claim. Therefore, they likewise would not debate the court's decision to deny Mr. Nicholls an evidentiary hearing regarding that claim. Generally, the district court pointed out that Mr. Nicholls's so-called new evidence was not new, was merely impeachment evidence of Dr. DeHaan, and was not persuasive in light of additional evidence showing his guilt; consequently, he could not show that no reasonable juror would find him guilty beyond a reasonable doubt. *See id.* at 760–63. Accordingly, the court determined that Mr. Nicholls did not demonstrate his actual innocence, which in turn, revealed his failure to demonstrate "a fundamental miscarriage of justice sufficient to overcome his procedural default" of his habeas claim of ineffective assistance of counsel. *Id.* at 763.

More specifically, first, the district court pointed out that Mr. Nicholls's evidence concerning the recent scientific advancements in fire investigations was not new. The standard and methodology that Mr. Nicholls proffered as recent advancements were actually the proposed new standards for fire investigations at the time of the trial. *See id.* at 760. Mr. Nicholls's defense counsel used those then-proposed standards in the questioning of the witnesses. *See id.* In the same vein, the district court also noted that Mr. Nicholls "failed to demonstrate that any other 'scientific advancements' establish his actual innocence." *Id.* Thus, the

15

court was unpersuaded that Mr. Nicholls's evidence about these new scientific advancements and standards would "demonstrat[e] that it is more likely than not that no reasonable juror would have convicted him." *Id.*

Second, the district court deemed equally unavailing Mr. Nicholls's evidence apparently showing that Dr. DeHaan changed his opinion in a separate action in Louisiana because of the advancements in fire science. The district court reasoned that such "evidence does not affirmatively demonstrate that Mr. DeHaan's opinion in the Nicholls case was incorrect." *Id.* at 761. The district court then recounted the differences between the Louisiana case and Mr. Nicholls's case—as Dr. DeHaan himself explained in an evidentiary hearing the postconviction Colorado state court held. *Id.* The district court observed that the evidence Mr. Nicholls proffered in this regard could be used to merely impeach Dr. DeHaan's credibility and bolster Mr. Nicholls's own expert—who opposed Dr. DeHaan's testimony at trial. *Id.* Because such evidence could only be used to merely impeach Dr. DeHaan, the court concluded that the evidence could not show Mr. Nicholls's actual innocence.

And, third, the district court found unpersuasive Mr. Nicholls's "supposedly confidential" evidence showing that Dr. DeHaan was investigated by the Ethics Committee of the American Academy of Forensic Science and was found to have unethically offered misleading testimony in the Louisiana case. *Id.* at 762.

16

Although finding such a report troubling, the court again found that such evidence "goes to the impeachment of Mr. DeHaan's testimony, it does not demonstrate Mr. Nicholls' actual innocence." *Id.*

At bottom, the court concluded that, despite these claims against Dr. DeHaan, Mr. Nicholls still failed to proffer evidence of his actual innocence, as required by *Schlup*. *Id.* Indeed, the court opined that, even if one were to assume that the jury would fully discredit Dr. DeHaan and his methodology, Mr. Nicholls could not show that it is "more likely than not . . . no reasonable juror would find him guilty beyond a reasonable doubt" in light of the additional evidence surrounding the case. *See id.* at 762–63 (quoting *House*, 547 U.S. at 538). The court determined that Mr. Nicholls failed to meet his burden on his actual-innocence claim; thus, his showing was insufficient to overcome the procedural default of his habeas claim. *Id.* at 763.

Having thoroughly considered Mr. Nicholls's filings, the record, and the relevant law, we conclude that no reasonable jurists would debate the correctness of the district court's disposition of Mr. Nicholls's request for an evidentiary hearing concerning his actual-innocence gateway claim.

**B**

In support of his other COA request, Mr. Nicholls very briefly argues that the district court erred by determining that his second and third claims—which he

17

now refers to singularly as his "due-process claim"—were "not cognizable in federal habeas."[8]  Aplt.'s Opening Br. at 61.  His argument amounts to little more

---

[8]     It is conceivable that Mr. Nicholls is seeking a COA here to challenge the district court's resolution of only one of these two claims.  That is, it is conceivable that Mr. Nicholls's argument here only relates to the district court's resolution of his third claim—but not his second.  We are alert to this possibility primarily because, in describing one of the "two federal constitutional claims addressed in this appeal," which relates to a purported due-process violation based on "new evidence including advances in arson science demonstrat[ing] that the convictions were based on unreliable evidence," Mr. Nicholls offers a bare citation to the portion of his district-court argument that only involved his third claim.  Aplt.'s Opening Br. at 2–3 (citing R., Vol. I, at 24–26).  Mr. Nicholls of course also denominates his claim here in the singular as a "due-process claim."  *Id.* at 61.  We do not think, however, that it is likely that Mr. Nicholls—in attacking the district court's rationale regarding the lack of cognizability of his purported due-process claim in habeas proceedings—intended to limit his challenge to the court's resolution of only his third claim.  First and foremost, Mr. Nicholls does not expressly limit his challenge in this fashion, though he has had an opportunity to do so.  The district court disposed of Mr. Nicholls's second and third claims collectively, without drawing any analytical distinctions between them.  It did so under the rationale that they were, in essence, stand-alone actual-innocence claims based on purported newly discovered evidence—rather than gateway claims allowing for the resolution of distinct, defaulted habeas claims (e.g., the ineffective-assistance claim here).  And the court reasoned that such stand-alone actual-innocence claims were not cognizable in federal habeas proceedings.  Indeed, in its district-court briefing, the State also seemed to treat Mr. Nicholls's arguments concerning his second and third claims as presenting a single newly discovered evidence claim, and it pronounced this claim "not cognizable in federal habeas."  R., Vol. II, at 6, 33 (Suppl. Pre-Answer Resp., filed June 29, 2017).

In contesting the district court's unified rationale here, Mr. Nicholls cites to the portion of the record containing the court's collective disposition, but he makes no explicit attempt to distinguish between his second and third claims.  *See* Aplt.'s Opening Br. at 61 (citing R., Vol. II, at 581–84 (Dist. Ct. Order, dated Feb. 26, 2019)).  Furthermore, because the court addressed and adjudicated his second and third claims in a unified fashion, without drawing analytical distinctions between them, it does not strike us as implausible that Mr. Nicholls might elect to

than the following one-sentence conclusory assertion: "[A] claim that one's convictions are based on unreliable forensic evidence, which is clearly what Mr. Nicholls has alleged here, is a cognizable violation of the Due Process Clause, as other federal courts have recognized." *Id.* at 61–62. As support for this assertion, Mr. Nicholls merely refers—without elaboration, or even a pin citation—to a lone out-of-circuit decision: *Han Tak Lee v. Houtzdale SCI* (*Lee II)*, 798 F.3d 159 (3d Cir. 2015).

We conclude that Mr. Nicholls has not shown that reasonable jurists would debate the district court's resolution of his second and third claims. Accordingly, we deny him a COA regarding these claims—or, as Mr. Nicholls labels them—his due-process claim.

---

speak of these claims in a singular fashion—as a unified whole—in explaining why the district court allegedly erred in not perceiving that they were cognizable claims implicating the Due Process Clause. That is to say, it would not have been unreasonable (if not optimal) for Mr. Nicholls to elect to refer to his two claims—without differentiation—in the singular as his "due-process claim," in explaining the court's ostensible misperception of them as non-cognizable, actual-innocence claims. Ultimately, recognizing the lack of clarity in Mr. Nicholls's brief on this matter, we adopt the reading of it that at least had the potential of being most favorable to Mr. Nicholls—of securing him a COA, not only on his third claim, but also on his second claim. As things have turned out, however, even this reading of his brief does not avail Mr. Nicholls. For reasons detailed *infra*, we conclude that Mr. Nicholls has offered nothing that would cause reasonable jurists to debate the district court's resolution of his second and third claims and, accordingly, deny him a COA.

At the outset, we express our serious doubts about whether Mr. Nicholls's "skeletal" argument is sufficient to preserve his request for a COA assessment. *United States v. Pursley*, 577 F.3d 1204, 1231 n.17 (10th Cir. 2009); *see Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."); *see also Grant v. Trammell*, 727 F.3d 1006, 1025 (10th Cir. 2013) ("Even a capital defendant can waive an argument by inadequately briefing an issue, and we break no new ground by holding the same here." (citation omitted)). However, even putting those doubts aside, we conclude that Mr. Nicholls has not done enough to secure a COA. He gives us no ground to question what seems patent from the record: reasonable jurists would not debate that the district court understood the import of Mr. Nicholls's second and third claims and correctly rejected them as non-cognizable on habeas review.

In connection with his second claim, Mr. Nicholls succinctly stated the essence of his argument: "With the ability to extensively go into the newly discovered evidence the jury would see how unreliable and questionable the [] prosecution's evidence is and would likely acquit me. The interests of justice require me [to have] a fair chance to submit this newly discovered evidence to a jury." R., Vol. I, at 24. Regarding his third claim, Mr. Nicholls told the district court that the CCA "misapplied" "Colorado's newly discovered evidence standard"

20

when it found that the evidence he proffered was "merely impeaching." *Id.* at 25–26. Mr. Nicholls averred that "Colorado's newly discovered evidence standard is founded upon the federal standards for newly discovered evidence." *Id.* at 25–26. He reasoned that, "[h]ad the State not misapplied this standard[,] there would have been a hearing at which [he] would have prevailed." *Id.* at 26. "[M]ost importantly," Mr. Nicholls noted, that absent such a purported misapplication of the newly discovered evidence standard, the state court "would have limited the information the jury would have had to consider, creating more reasonable doubt to a jury." *Id.* And, in conclusion—without elaboration—Mr. Nicholls conclusorily "ask[ed] th[e] court to find that the State court violated my right to due process under the 14th Amendment." *Id.*

The district court, however, discerned no basis to consider his claims on habeas review. Specifically, in disposing of Mr. Nicholls's second and third claims, the district court explained that the claims "do not state cognizable habeas corpus claims because there is no federal constitutional right (1) to receive a new trial on newly discovered evidence; and (2) to postconviction review in state court." *Id.*, Vol. II, at 582 (Dist. Ct. Order, dated Feb. 26, 2019). Citing Supreme Court authority, the district court explained that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in

21

the underlying state criminal proceeding." *Id.* at 582–83 (emphasis omitted) (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)).  The court also entertained the possibility that Mr. Nicholls was effectively attempting to assert "a constitutional due process violation based on the [CCA's] refusal to grant a new trial in his postconviction proceedings." *Id.* at 583.  But it found that such a potential averment was equally unavailing since "such claims would not demonstrate the existence of any independent constitutional violation *during the course of his underlying criminal proceedings*." *Id.*  (emphasis added).  It noted that "[t]he issue of whether a new trial should be granted is a matter of state law." *Id.* at 583–84 (first citing *Herrera*, 506 U.S. at 408; then citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)).

We conclude that reasonable jurists would not debate that the district court properly understood the substance of Mr. Nicholls's second and third claims and correctly rejected them.  Mr. Nicholls offers no persuasive explanation for how his purported second and third claims—what he calls his "due-process claim"—are anything other than claims of actual innocence based on newly discovered evidence.  The mere fact (if it be so) that Colorado's newly discovered evidence standards mirror federal newly discovered evidence standards—as Mr. Nicholls has asserted—would not, without more, present for the consideration of the district court an independent (non-defaulted) constitutional violation.  Accordingly, no

22

reasonable jurists would debate the district court's determination that Mr.

Nicholls's second and third claims are not cognizable in habeas proceedings; in

particular, there is no cognizable stand-alone actual-innocence claim based on

newly discovered evidence, at least in a noncapital case. *See Herrera*, 506 U.S. at

400 ("[C]laims of actual innocence based on newly discovered evidence have

never been held to state a ground for federal habeas relief absent an independent

constitutional violation occurring in the underlying state criminal proceeding.");

*see* Brian R. Means, FEDERAL HABEAS MANUAL § 1:61, Westlaw (database

updated May 2021) ("A freestanding claim of actual innocence in a non-capital

case based on newly discovered evidence is not ground for habeas corpus relief"

(citing *Herrera*, 506 U.S. at 400)); *see also Farrar v. Raemisch*, 924 F.3d 1126,

1131 (10th Cir. 2019) ("We have thus held that actual innocence does not

constitute a freestanding basis for habeas relief.").

Mr. Nicholls's unadorned reference to *Lee II* does not alter our decisional

calculus. Having reviewed that case, we acknowledge that the Third Circuit there

upheld the grant of habeas relief to a petitioner who had been charged and

convicted in state proceedings of an alleged arson-related death; among other

things, the petitioner claimed that "his continued incarceration also lacked the due

process due him because newly developed scientific evidence showed he was

probably innocent." 798 F.3d at 161–62; *see id.* at 169 (affirming "the District

Court's grant of *habeas* relief"). In affirming, the Third Circuit predicated its analysis in substantial part on the legal foundation that had been established in petitioner's prior Third Circuit appeal—*Han Tak Lee v. Glunt (Lee I)*, 667 F.3d 397 (3d Cir. 2012). *See, e.g.*, *Lee II*, 798 F.3d at 162 (citing and quoting from *Lee I*). As relevant here, in *Lee I*, the Third Circuit panel expressly declined to reach the question of whether "an actual innocence claim based upon newly discovered evidence [was] cognizable in a federal habeas corpus petition," but instead granted petitioner the right to discovery on remand under the view that petitioner's "allegations, if proven, would be sufficient to establish a due process violation." *Lee I*, 667 F.3d at 400, 403 n.5; *see also Lee II*, 798 F.3d at 162 (noting that *Lee I* proceeded from the premise that petitioner's action "raised a due-process claim rather than a free-standing innocence claim").

It is notable, however, that state counsel on appeal in *Lee I* conceded that petitioner's claim sounded in due process and that "this type of claim is cognizable in a federal habeas petition." *Lee I*, 667 F.3d at 403 n.6. Consequently, the characterization of petitioner's newly discovered evidence claim as a due-process claim—cognizable in habeas proceedings—actually was not contested in the *Lee* litigation. The same certainly cannot be said here. *See* R., Vol. II, at 33 (State's Suppl. Pre-Answer Resp., filed June 29, 2017) (characterizing Mr. Nicholls's second and third claims as a unified newly discovered evidence claim that was

24

"not cognizable in federal habeas"). More importantly, even if *Lee I* is understood

as holding that a petitioner's claim based on newly discovered scientific evidence

may be in some instances characterized as a due-process claim cognizable in

habeas proceedings, Mr. Nicholls does nothing to explain why he should benefit

from *Lee I* and its progeny here—let alone clarify how *Lee I* and *Lee II* (which he

specifically cites) square with the Supreme Court's actual-innocence decision in

*Herrera* and our own precedent applying it.[9] We will not craft arguments to

support the cause of even pro se litigants, *see Garrett v. Selby Connor Maddux &*

---

[9] Through our independent research, we unearthed the Ninth Circuit's decision in *Gimenez v. Ochoa*, 821 F.3d 1136 (9th Cir.), *cert. denied*, --- U.S. ----, 137 S. Ct. 503 (2016), which cites *Lee II* and purports to adopt the Third Circuit's "rule" that "permits [habeas] petitioners to seek relief [under a due-process theory] from convictions based on flawed forensic evidence" that is revealed through new scientific developments. *Id.* at 1144–45; *cf. id.* at 1144 (relatedly noting that "recognizing such a [due-process] claim is essential in an age where forensics that were once considered unassailable are subject to serious doubt"). As further support for this supposed rule, *Gimenez* cited the Third Circuit's decision in *Albrecht v. Horn*, 485 F.3d 103 (3d Cir. 2007). Even putting aside the fact that *Gimenez* did not actually grant relief to the petitioner under this ostensible rule, *see* 821 F.3d at 1145—raising the possibility that its holding adopting the rule was unnecessary dictum—there is as least some reason to question the court's reading of *Lee II*. First, as we have noted, in the *Lee* litigation the characterization of petitioner's habeas claim as one sounding in due process was not contested. *See Lee I*, 667 F.3d at 403 n.6. And, second, it is not patent how *Albrecht*—which does not even mention *Lee I* or *Lee II*—evinces the rule that *Gimenez* discerned. In any event, the important point here is that it is Mr. Nicholls's burden—not ours—to explain the import of *Lee I* and its progeny and how these cases would cause reasonable jurists to debate the district court's determination that his second and third claims are not cognizable in habeas proceedings. And Mr. Nicholls's unadorned citation to *Lee II* does not even begin to carry this burden.

*Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *a fortiori* we will not attempt to do so for Mr. Nicholls in this counseled appeal. Accordingly, Mr. Nicholls's bare reference to *Lee II* does not alter our decisional calculus.

In sum, we conclude that reasonable jurists would not debate that the district court understood the substance of Mr. Nicholls's second and third claims—which Mr. Nicholls labels his due-process claim—and correctly determined that they were not cognizable in federal habeas proceedings.

**III**

Turning away from our COA inquiry, Mr. Nicholls contends that, irrespective of whether the court erred in denying him an evidentiary hearing, it wrongly denied his request for appointed counsel. *See* Aplt.'s Opening Br. at 59. Mr. Nicholls specifically claims that the district court denied his request partly because he did not request any discovery. *Id.* But, he reasons, if counsel had been appointed, Mr. Nicholls could have made appropriate requests for discovery and, as a consequence, provided even better arguments regarding the need for an evidentiary hearing. *Id.* Furthermore, says Mr. Nicholls, counsel could have obtained a court-appointed defense expert to further explain the technical scientific evidence and "the key implications" of § 2254(e)(1) "as it relates to the jury's rejection of the testimony of Mr. Church and the defense's adequate rebuttal of the prosecution's theory of financial desperation that supposedly motivated the

26

crimes." *Id.* Further, he reasons that counsel could have provided the court "with broader contextual information about wrongful convictions in arson cases," "alerted the court to caselaw supporting Mr. Nicholls's Due-Process claim," and "identified how the state postconviction court misapplied the prejudice prong" of his ineffective assistance of counsel claim. *Id.* at 60.

As we stated earlier, Mr. Nicholls does not need a COA for us to review an appeal from the district court's denial of his motion to appoint counsel. *See supra* note 1. Thus, we review Mr. Nicholls's arguments on the merits.

"There is no constitutional right to counsel beyond the direct appeal of a criminal conviction . . . ." *Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008). Mr. Nicholls, however, must be afforded counsel if the district court determines that an evidentiary hearing was required. *See Swazo v. Wyoming Dep't of Corr. State Penitentiary Warden*, 23 F.3d 332, 333 (10th Cir. 1994). Barring that, "generally appointment of counsel in a § 2254 proceeding is left to the [district] court's discretion." *Id.* More specifically, "the district court has broad discretion to appoint counsel . . . and its denial of counsel will not be overturned unless it would result in fundamental unfairness impinging on due process rights." *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991) (quoting *Maclin v. Freake*, 650 F.2d 885, 886 (7th Cir. 1981)). "In determining whether to appoint counsel, the district court should consider a variety of factors, including the merits of the

litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Id.*; *accord Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995).

In denying Mr. Nicholls's request for appointment of counsel, the district court first stated that because "an evidentiary hearing is not warranted in this action and no discovery has been requested or authorized," Mr. Nicholls "is not entitled to appointment of counsel." R., Vol. II, at 727. Nevertheless, the district court further considered the merits of Mr. Nicholls's request before concluding that it was "not persuaded that appointment of counsel is necessary in the interests of justice." *Id.* Recounting each of the factors we ordinarily consider, the district court reasoned that, "[a]lthough the state court record is extensive, it does not appear that the remaining habeas claims are particularly complex or that [Mr. Nicholls] lacks the ability to argue the merits of those claims." *Id.*

After thorough consideration of Mr. Nicholls's filings, the record, and the relevant law, we uphold the court's decision. Specifically, for substantially the reasons that the court articulated, we discern no abuse of discretion in the court's decision to deny Mr. Nicholls's request for appointment of counsel.

## IV

For the foregoing reasons, we **DENY** Mr. Nicholls a COA and **DISMISS** this matter, insofar as it challenges the district court's denial of Mr. Nicholls's

request for an evidentiary hearing for his actual-innocence gateway claim and the denial of his second and third claims as non-cognizable in habeas proceedings. And we **AFFIRM** the district court's order denying Mr. Nicholls's motion for appointment of counsel.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge